Patricia Loretta REED, Wife of/or David Reed, and Ardell Reed, Individually and As Natural Tutrix and Administratrix of the Estate of Her Minor Son, Keith Reed, Plaintiffs-Appellees,

v.

GENERAL MOTORS CORP., et al., Defendants,

Gerard Meche and Casualty Reciprocal Exchange, Defendants-Appellants.

No. 84-4613.

United States Court of Appeals, Fifth Circuit.

Oct. 15, 1985.

Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Gerald E. Meunier, Irving J. Warshauer, New Orleans, La., for plaintiffs-appellees.

Before RUBIN and REAVLEY, Circuit Judges, and POLOZOLA *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

This personal injury suit arising out of an automobile accident was prosecuted against two individual defendants and their insurers. Because the district court admitted evidence of the amount of liability insurance carried by the defendants and because we are unable to conclude that this was not prejudicial both on the question of the defendants' liability and the amount of damages awarded, we reverse the judgment in favor of the plaintiffs. We conclude that there was, however, sufficient evidence to warrant a verdict that both defendants were negligent even though the plaintiffs' car was struck only by the vehicle driven by one of the defendant drivers and affirm the district court's denial of a directed verdict. We, therefore, remand the case for a new trial.

## I.

One Saturday night in May, 1982, David Reed, his wife, Patricia Loretta, his mother, Ardell, and his fifteen-year-old brother, Keith, were traveling west on Interstate Highway 10 in David Reed's Chevrolet Monza. They had left their home in Alabama earlier that day and were traveling to Texas. Near Lafayette, Louisiana, Ardell Reed began to suffer from cramps so David stopped the car to adjust her seat and thus ease her discomfort. David parked the car, with its emergency lights flashing, on the right shoulder of the highway, when it was violently struck in the rear by a Pontiac Trans Am driven by

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Keith M. Borne, Lafayette, La., for defendants-appellants.

* District Judge of the Middle District of Louisiana, sitting by designation.

Brent Boudreaux. All of the passengers in the Reed auto were seriously injured.

At the time of the accident, Boudreaux and his friend, John Fontenot, were returning home to Kaplan, Louisiana from the Breaux Bridge Crawfish Festival. Some of their friends had left earlier, en route through Lafayette to Kaplan, and Boudreaux was trying to catch up with them. Soon after he left Breaux Bridge, Boudreaux's vehicle was passed on the right shoulder of the road by a 1981 Chevrolet ¾-ton pick-up truck, driven at a high rate of speed by Gerard Meche. With encouragement from Fontenot, Boudreaux followed Meche onto the shoulder of the highway, driving equally fast and passing vehicles proceeding in the same direction. The two vehicles at times speeded to over ninety miles an hour. There was testimony that Boudreaux merely followed Meche but there was also testimony that at times Boudreaux passed Meche and took the lead. The evidence warranted, although it certainly did not compel, the inference that Meche knew what Boudreaux was doing and that the two were engaged in racing or some other sort of rivalry.

As the two vehicles approached the Reed vehicle, Meche passed an automobile by traveling on the right shoulder of the road and returned to the right lane of the highway. Boudreaux attempted to follow Meche's example. As his car moved onto the shoulder it struck the rear of the Reed vehicle.

Invoking diversity jurisdiction, the four Reeds sued Boudreaux and Meche, and, as the Louisiana Direct Action Statute [1] permits, their insurers, Insured Lloyds and Casualty Reciprocal Exchange. After trial on the merits, the jury returned a verdict in favor of each of the plaintiffs and against all of the defendants jointly.

In response to special interrogatories, the jury found that (1) both drivers had been negligent; and (2) Meche had caused, assisted, or encouraged Boudreaux in the commission of an unlawful act that had proximately caused the plaintiffs' injuries. The jury attributed fault under the Louisiana Comparative Negligence Act [2] 70% to Boudreaux and 30% to Meche. It awarded damages totalling $450,000. Under Louisiana law, Meche and his insurer are solidarily liable with Boudreaux and his insurer for the full award. The determination that Boudreaux was 70% negligent does not reduce Meche's exposure to the plaintiffs, but serves only to fix the liability for contribution between the codefendants. [3] Only Meche and his insurer, Casualty Reciprocal Exchange, appeal.

## II.

At the time this case was tried, Louisiana courts permitted a defendant to try to mitigate the damages that might be assessed against him by introducing evidence of his poverty and inability to pay a large verdict. For this purpose, Boudreaux sought to introduce evidence of the limits of his insurance coverage, $5,000 per person and $10,000 per accident, amounts clearly inadequate to compensate any of the plaintiffs. To accord the plaintiffs supposed equal treatment, the district court permitted them to introduce evidence of Meche's coverage, $500,000.

The Louisiana inability-to-pay doctrine originated in an 1886 Louisiana Supreme Court decision, *Williams v. McManus.* [4] In that case, the court reduced an award for slander, in part because the defendant was "a laborer of general good demeanor and of limited means." [5] Twelve years later, in *Loyacano v. Jurgens,* [6] the Louisiana court held: "A party's circumstances may not improperly be considered to a reasonable

---

1. La.Rev.Stat.Ann. § 22:655.

2. 1979 La.Acts, No. 431. *See* La.Civ.Code art. 2103 and La.Code Civ.P. art. 1812.

3. *See Diggs v. Hood*, 772 F.2d 190 (5th Cir.1985) interpreting Louisiana law).

4. 38 La.Ann. 161 (1886).

5. *Id.* at 164.

6. 50 La.Ann. 441, 23 So. 717, 718 (1898).

extent in estimating damages to be awarded in a case like this, where defendant personally was not at fault."

The inability-to-pay rule was founded on equitable considerations explained by a Louisiana Court of Appeal a half century later:

> It has never been considered good policy to bankrupt one to pay another even though the award granted is not in line with other cases involving the same injuries and might not fully compensate the plaintiff for the injuries he received. Fair justice between both parties must be arrived at.[7]

The propriety of the rule, however, had been questioned by some Louisiana appellate judges,[8] and the Louisiana Supreme Court had held the doctrine inapplicable in suits involving solvent and insolvent joint tortfeasors.[9]

After this case was tried, the Louisiana Supreme Court reversed entirely the jurisprudential line that admitted evidence of inability to pay. In *Rodriguez v. Taylor*,[10] the court stated: "[T]he wealth or poverty of a party to a lawsuit is not a proper consideration in the determination of compensatory damages."[11] The defendants argue that *Rodriguez* should be given retroactive effect and applied here, but we need not decide that issue. There is a more fundamental reason why Louisiana's inability-to-pay doctrine should not have been applied in this federal action.

The inability-to-pay doctrine was not a defense.[12] It did not bar recovery; it merely allowed evidence concerning the defendant's pecuniary condition to be considered in arriving at the measure of damages. Although the *Erie* rule [13] requires federal courts sitting in diversity to follow substantive state law, they apply federal procedural rules.[14] Because the inability-to-pay doctrine was evidentiary in nature, it was not applicable in federal actions. The Federal Rules of Evidence, rather than state rules, therefore govern the admissibility of evidence in diversity cases,[15] including questions of the admissibility of evidence of insurance.[16]

Rule 411 of the Federal Rules of Evidence proscribes the admission of evidence that a person was or was not insured against liability "upon the issue whether he acted negligently or otherwise wrongfully." However, "[e]vidence of insurance against liability" is not barred, it continues, "when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."

The jury knew, of course, that Casualty Reciprocal Exchange insured Meche because it was named as a defendant. The fact that each party was insured had "independent, substantive evidentiary relevance," as we held in *Dicks v. Cleaver*.[17] But the fact that the existence of insurance was admissible, did not mean that the court was bound, or even permitted, to admit the amount of coverage. There was no issue to which the amount of either Meche's or

---

7. *Cole v. Sherrill*, 7 So.2d 205, 211 (La.App. 2d Cir.1942) (*writ denied*).

8. *Davis v. Moore*, 353 So.2d 740, 743–44 (La. App. 4th Cir.1978) (Lemmon, J. and Boutall, J. concurring).

9. *Daniels v. Conn*, 382 So.2d 945 (La.1980).

10. 468 So.2d 1186 (La.1985).

11. *Id.* at 1188.

12. *Williams v. Garner*, 268 So.2d 56 (La.App. 1st Cir.1972). *See also Thomas v. State Farm Mutual Automobile Ins. Co.*, 391 So.2d 39 (La.App. 3d Cir.1980) and *Washington v. Anglade*, 359 So.2d 1330 (La.App. 4th Cir.1978).

13. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

14. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *See generally* 1A J. Moore, W. Taggart, A. Vestol & J. Wicker, Moore's Federal Practice ¶ 0.301–0.328 (2d ed. 1985).

15. Fed.R.Evid. 1101(b). *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 609 F.2d 820, 821–22 (5th Cir.1980).

16. *Urico v. Parnell Oil Co.*, 708 F.2d 852, 854 n. 1 (1st Cir.1983).

17. 433 F.2d 248, 254 (5th Cir.1970).

Boudreaux's insurance was relevant. Therefore, the limits of coverage should have been excluded pursuant to the dictates of Rule 411. As the Ninth Circuit observed in *Geddes v. United Financial Group,*[18] consideration of "the ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result."

The parties had stipulated that Boudreaux and Meche were both insured and the names of their insurers; this established the predicate for a judgment against the insurers, as named defendants, if judgment were rendered against their respective insureds. However, even in a Louisiana court, it would have been error to admit evidence of the amount of Meche's insurance, for as a Louisiana appellate court held in *Ponder v. Groendyke Transport, Inc.*[19] "[t]he financial status of a defendant is irrelevant unless he places it at issue by claiming inability to pay." Even under the now discarded Louisiana rule, when there were solvent and insolvent joint tortfeasors, evidence of the insolvent defendant's inability to pay was inadmissible, and might not be considered in determining the amount of damages to be awarded or in apportioning the damages.[20]

■ The parties' stipulation in the pretrial order that Meche's policy was the best evidence of its contents did not make the amount of insurance relevant or make the entire policy admissible. The failure of the insurance company to object to admissibility at some time before the day of trial does not constitute a waiver of its objections in the absence of pretrial proceedings that required it to take a position.

■ The trial court's admonitions to the jurors at the trial's conclusion that they were not to consider the liability limits of the parties' insurance policies in determining who, if anyone, was negligent, did not suffice to cure the error. The jury could not be expected to ignore the fact that, if it found only Boudreaux liable, the seriously injured plaintiffs would share only $10,000 but, if it found both Boudreaux and Meche liable, a deeper pocket would be available. We may speculate that the evidence of Meche's negligence was so overwhelming that the liability verdict was not tainted, but we cannot be sure. The wisdom of experience is embodied in the aphorism that the scent of a skunk thrown into the jury box cannot be wiped out by a trial court's admonition to ignore the smell.[21] The reference to insurance coverage was not accidental or fleeting. The plaintiffs' counsel argued for admissibility of the limits in Meche's policy, persuaded the district court, and made a deliberate effort to inform the jury of the amount. Considering how important the matter was considered to be, we cannot overlook it now as harmless even as to the issue of Meche's liability.

### III.

At the conclusion of the plaintiffs' case, the defendants moved for a directed verdict. The defendants did not, however, seek a judgment notwithstanding the verdict, as Rule 50(b), Federal Rules of Civil Procedure, permits and as the jurisprudence requires as a prerequisite to an appeal for insufficiency of the evidence to support a verdict.[22] However, because the parties have briefed and argued the ques-

**18.** 559 F.2d 557, 560 (9th Cir.1977).

**19.** 454 So.2d 823, 831 (La.App. 3d Cir.1984).

**20.** *Daniels v. Conn,* 382 So.2d 945 (La.1980); *McGrew v. State Farm Mutual Automobile Insurance Company,* 385 So.2d 1276 (La.App. 3d Cir. 1980).

**21.** *Dunn v. United States,* 307 F.2d 883, 886 (5th Cir.1962), *quoted* in *United States v. Garza,* 608 F.2d 659, 666 (5th Cir.1979); *United States v.*

*Rodriguez,* 585 F.2d 1234, 1244 (5th Cir.1978); *United States v. Joseph,* 533 F.2d 282, 289 (5th Cir.1976) (Tuttle, J., dissenting).

**22.** *Rawls v. Daughters of Charity of St. Vincent De Paul, Inc.,* 491 F.2d 141 (5th Cir.), *reh'g denied,* 494 F.2d 1296 (5th Cir.), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 307 (1974). *See also* Wright, Federal Courts 640 (4th ed. 1984).

tion and, if the evidence is the same in a new trial, it will again arise, we discuss it.

■ Meche contends that the evidence is insufficient to establish that his negligence in speeding and passing vehicles on the right shoulder of the road was a proximate cause or even a cause in fact of the accident. These acts, he urges, did not "influence" or "cause" Boudreaux to travel at an excessive rate of speed or to drive on the shoulder of the highway. The evidence, however, was sufficient to justify the inference that the jury evidently drew. Although Boudreaux was himself in a hurry, he got the idea of passing vehicles on the right from Meche. Thereafter, he engaged in what might be viewed as a game of tag or pursuit with Meche and it may be inferred that Meche himself knowingly joined in the game. There was, of course, evidence that might have warranted the conclusion that Boudreaux acted wholly on his own, and would have driven with the same breakneck speed and the same lack of caution had he never seen Meche. That is not, however, the version the jury credited and we are unable to say that the jury's conclusion lacks the support of substantial evidence in the record.[23]

Louisiana Civil Code article 2324 imposes joint liability on anyone who assists or encourages another in the commission of an unlawful act. This article extends,[24] but is not limited, to conspiracies. In *Walker v. Champion*,[25] the Louisiana Supreme Court considered liability for injuries that resulted when the defendants threw bottles in the direction of the plaintiff, apparently intending only to scare him, but misjudged their aim and hit the plaintiff. The court imposed liability upon all the participants under article 2324, finding that they all "encouraged or assisted" the particular defendant who actually hit the plaintiff. The Court observed, "[i]t should have been apparent to [all bottle throwers] alike that what they were doing was dangerous, and likely to cause serious injuries to Davis."[26]

Under Louisiana's "duty risk" analysis, the test is whether the negligence of the defendant was both a cause in fact of the injury and a legal cause of the injury.[27] Liability may be imposed if the conduct was a cause in fact, "a necessary antecedent" to the harm,[28] without which the incident would not have occurred,[29] even though it was not the sole cause.[30] Legal cause requires a proximate relation to the harm suffered that is substantial in character.[31] In any event, liability in this case need not rest on article 2324 for the jury also found, in answer to a separate interrogatory, that Meche was negligent.[32] The evidence was sufficient to support this conclusion.

Fontenot, for example, testified that, before Meche passed Boudreaux on the right shoulder of the highway, Boudreaux had not driven on the shoulder. Then "I turned to Brent [Boudreaux] and said, well, go for

**23.** *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). *See also Bueno v. City of Donna,* 714 F.2d 484, 489 (5th Cir.1983); *Gross v. Black & Decker (U.S.), Inc.,* 695 F.2d 858, 864 (5th Cir.1983).

**24.** *See Miller v. Keating,* 339 So.2d 40 (La.App. 3d Cir.1976), *aff'd* 349 So.2d 265 (La.1977); *Rollo v. Dison,* 415 So.2d 231 (La.App. 2d Cir.), *writ denied,* 418 So.2d 1350 (La.1982).

**25.** 288 So.2d 44 (La.1973).

**26.** *Id.* at 46.

**27.** *See Dixie Drive It Yourself Sys. New Orleans Co., Inc. v. American Beverage Co.,* 242 La. 471, 487–90, 137 So.2d 298, 302–04 (1962); *Ishee v. State of La. through Dep't of Transp. and Dev.,* 413 So.2d 1362, 1366 (La.App. 1st Cir.1982).

**28.** *Dixie Drive It Yourself Sys. New Orleans Co.,* 242 La. at 471, 137 So.2d at 302.

**29.** *Ishee v. State of La. through Dep't of Transp. and Dev.,* 413 So.2d 1362, 1366 (La.App. 1st Cir.1982); *Marcum v. United States,* 621 F.2d 142, 145 (5th Cir.1978).

**30.** *Kalmn, Inc. v. Empiregas Corp.,* 406 So.2d 276, 280 (La.App. 3d Cir.1981). *See also Lombard v. Sewerage & Water Board of New Orleans,* 284 So.2d 905, 913 (La.1973).

**31.** *Lombard v. Sewerage & Water Board of New Orleans,* 284 So.2d 905, 913 (La.1973).

**32.** Apparently under Louisiana's negligence article, La.Civ.Code art. 2315.

it. You know. He done it, why can't we? So we passed up on the right shoulder too." By doing so and driving at least seventy-five or eighty miles an hour, Boudreaux passed three or four cars. Then "[w]e got back on the main portion of the highway and slowed down, down there about sixty or sixty-five. And then we were just, to me, we was following the white pick-up [Meche's vehicle]." From the time Fontenot first saw the pick-up truck, "[t]he only thing that [Boudreaux's vehicle] did that [Meche's vehicle] didn't, was wreck." Fontenot testified that Boudreaux never passed the Meche vehicle. "If [Boudreaux] would have tried, we would have passed it," because, as Boudreaux testified, the Trans Am was capable of greater speed than a Chevrolet truck. Boudreaux testified that his vehicle was never more than fifty yards behind the Chevrolet. Boudreaux also testified that the two vehicles "kept basically passing each other," and that they were weaving in and out of traffic together for thirteen miles.

Coupled with the other evidence in the record, this was enough to support the conclusion that Meche was negligent in setting a bad example for Boudreaux, knowing that Boudreaux was following his course of conduct, as well as the conclusion that he encouraged or assisted Boudreaux. Another jury may not find Meche negligent. But there is sufficient evidence in this record to warrant the conclusion that he was. The district court, therefore, did not err in refusing to enter a directed verdict.

For these reasons, the judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.